IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NATIONWIDE GENERAL INSURANCE COMPANY and NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>GARY DIBILEO, JR., JERALD COYNE a.k.a. JERRY COYNE, and JONATHAN MARTINES,<br><br>Defendants. | No. 3:19-CV-01003<br><br>(Judge Brann) |

**MEMORANDUM OPINION**

**JULY 20, 2021**

Plaintiffs Nationwide General Insurance Company and Nationwide Mutual Fire Insurance Company ("Nationwide") have sued Gary DiBileo, Jr., Jerald Coyne, and Jonathan Martines ("Declaratory Judgment Defendants"), seeking declaratory judgment from this Court as to the scope of Nationwide's duty to defend in an underlying lawsuit.

The motion is now ripe for disposition; for the reasons below, it is denied without prejudice to Nationwide's ability to renew the motion as the underlying action develops.

I.     BACKGROUND

Nationwide issues homeowner's insurance policies that provide coverage in case of certain accidents. The Declaratory Judgment Defendants were all insured individuals under their respective parents' policies. In this action, Nationwide seeks a declaration from this Court stating that it has no duty to the Declaratory Judgment Defendants in another civil suit before this Court: *Piazza v. Young*.[1]

A.     The *Piazza* Litigation

The duty to defend flows from the facts alleged in the underlying complaint. Thus, the Court must review the allegations from the Amended Complaint in the *Piazza* lawsuit ("*Piazza* Amended Complaint").[2] In the declaratory judgment action, I recount the facts as alleged in the *Piazza* Amended Complaint that are specifically relevant to the Declaratory Judgment Defendants.

The death of Timothy Piazza garnered local and national attention and stemmed from Timothy's prospective membership in the Alpha Upsilon Chapter of the Beta Theta Pi fraternity at The Pennsylvania State University in early 2017. On February 2, 2017, Timothy attended the chapter's Bid Acceptance Night.[3] Throughout that night, he and the other pledges were required to drink an

---

[1]  No: 4:19-cv-00180 (M.D. Pa.).
[2]  A more detailed recounting of the allegations in the *Piazza* litigation may be found at this Court's memorandum opinion on the motion to dismiss the original *Piazza* complaint at 403 F. Supp. 3d 421 (M.D. Pa. 2019). Although the complaint was subsequently amended, the facts remained largely the same. To be clear, in analyzing coverage for this declaratory judgment action, the Court reviews the *Piazza* Amended Complaint.
[3]  Doc. 32-11 ¶ 158.

excessive amount of alcohol as part of an event called "The Gauntlet."[4] By the end of Bid Acceptance Night, Timothy had consumed eighteen alcoholic drinks.[5] Some of the fraternity brothers put him on a couch on the first floor of the fraternity house, but Timothy apparently moved from the couch and fell down the basement stairs, suffering serious injuries and losing consciousness.[6] Later in the evening, several of the *Piazza* defendants, including DiBileo and Coyne, attached a backpack to Timothy's back and filled it with books to keep him from rolling onto his back and aspirating his own vomit.[7]

During several interactions with other fraternity members while unconscious, Timothy became increasingly sick. Around 4:00 a.m., he tried to stand up but fell backward and hit his head on the floor.[8] Coyne observed this, tried to shake Timothy awake and then exited the room, leaving Timothy alone and unattended.[9] Over the next two hours, Timothy attempted several times to get up, but failed each time, ultimately falling head first into the house's front door after trying to leave the house.[10] At 5:52 a.m., Martines approached Timothy while he

---

[4] *Id.* ¶ 159.
[5] *Id.* ¶ 247.
[6] *Id.* ¶¶ 257-62.
[7] *Id.* ¶¶ 278-80.
[8] *Id.* ¶¶ 302, 303.
[9] *Id.* ¶¶ 304, 305.
[10] *Id.* ¶¶ 306-309.

was lying on the floor but did not provide any aid and then left Timothy where he was.[11]

At almost 11:00 a.m. the following day, an unidentified fraternity member called 911, and Timothy was taken to a hospital.[12] The fraternity members spent the next two days trying to cover up their conduct, and Timothy died from his injuries one day later.[13] Timothy Piazza's parents sued on January 31, 2019, seeking damages for the conduct of the various defendants in that matter.

## II. DISCUSSION

### A. Standard of Review

I begin my analysis with the standard of review which undergirds summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[14] The Supreme Court of the United States has advised that Federal Rule of Civil Procedure 56 "should be interpreted in a way that allows it to accomplish this purpose."[15] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16]

---

[11] *Id.* ¶¶ 310-312.
[12] *Id.* ¶¶ 314, 315.
[13] *Id.* ¶¶ 317-332.
[14] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[15] *Id.* at 324.
[16] Fed. R. Civ. P. 56(a).

Material facts are those "that could alter the outcome" of the litigation, "and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[17]  A defendant "meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[18]  And a plaintiff must "point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[19]

A judge's task when "ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[20]  Thus, if "the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."[21]

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the

---

[17] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[18] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[19] *Id*.
[20] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).
[21] *Id*.

jury could reasonably find for the [nonmovant]."[22]  Part of the judge's role at this stage is to ask "whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed."[23]  In answering that question, the Court "must view the facts and evidence presented on the motion in the light most favorable to the nonmoving party."[24]  The evidentiary record at trial will typically never surpass what was compiled during discovery.

The party requesting summary judgment bears the initial burden of supporting its motion with evidence from the record.[25]  For example, while "at the motion-to-dismiss stage of proceedings a district court is obligated to accept the allegations in a plaintiff's complaint as true, it does not accept mere allegations as true at the summary judgment stage."[26]  The moving party must identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[27]  "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may,

---

[22] *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. 242, 252 (1986) (alterations in original).
[23] *Liberty Lobby*, 477 U.S. at 252 *(*quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)) (alteration and emphasis in original).
[24] *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020).
[25] *Celotex*, 477 U.S. at 323.
[26] *Wiest v. Tyco Electronics Corp.*, 812 F.3d 319, 330 (3d Cir. 2016).
[27] *Id.* (internal quotations omitted).

and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[28]

For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (1) citations to particular parts of materials in the record that go beyond mere allegations; (2) a showing that the materials cited do not establish the absence or presence of a genuine dispute; or (3) a display that an adverse party cannot produce admissible evidence to support the fact.[29]

Summary judgment is effectively "put up or shut up time" for the nonmoving party.[30] When the movant properly supports his motion, the nonmoving party must show the need for a trial by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[31] The nonmoving party will not withstand summary judgment if all it has are "assertions, conclusory allegations, or mere suspicions."[32] Instead, it must "identify those facts of record which would contradict the facts identified by the movant.'"[33] Moreover, "if a party fails to

---

[28] *Id.*
[29] Fed. R. Civ. P. 56(c)(1).
[30] *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (Fisher, J.).
[31] *Liberty Lobby*, 477 U.S. at 250.
[32] *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).
[33] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003).

properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the Court may "consider the fact undisputed for purposes of the motion."[34]  On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[35]

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[36]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[37]

### B.   Insurance Coverage Framework

The instant insurance dispute is governed by Pennsylvania state law.  "A court's first step in a declaratory judgment action concerning insurance coverage is to determine the scope of the policy's coverage."[38]  In doing so, this Court faces a question of law – the interpretation of an insurance contract – and must endeavor "to ascertain the intent of the parties as manifested by the language of the written instrument."[39]  I must read the policy as a whole and construe the contract "in accordance with the plain meaning of the terms."[40]  If the language of a policy is

---

[34] Fed. R. Civ. P. 56(e)(2); *see also Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018).
[35] Fed. R. Civ. P. 56(c)(3).
[36] *Liberty Lobby*, 477 U.S. at 249.
[37] *Id*. at 249–50 (internal citations omitted).
[38] *General Accident Ins. Co. of Am. v. Allen*, 547 Pa. 693 (1997).
[39] *Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011).
[40] *Id.*

clear and unambiguous, I must enforce that language; ambiguous language, however, must be construed against the insurer and in favor of the insured.[41]

"After determining the scope of coverage, the court must examine the complaint in the underlying action to ascertain if it triggers coverage."[42]  "It is well established that an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured."[43]  Under this approach, the "question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint."[44]  This principle, known as the four-corners rule, holds that "[a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy."[45]  Pennsylvania provides for no exception to this rule.[46]

### C.  Undisputed Facts

Having already established that the allegations in the *Piazza* Amended Complaint must be evaluated by the Court, I turn to the other important set of facts: the coverage provisions in the Nationwide policies.  The policies are

---

[41] *Id.* at 321.
[42] *General Accident Ins. Co. of Am.*, 547 Pa. at 706 (1997).
[43] *Kvaerner Metals Div. of Kvaerner U.S., Inc.*, 908 A.2d 888, 896 (Pa. 2006).
[44] *Lupu v. Loan City, LLC*, 903 F.3d 382, 389 (3d Cir. 2018) (internal quotation marks omitted) (quoting *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010)).
[45] *Jerry's Sport Ctr.*, 2 A.3d at 541 (citations omitted).
[46] *Lupu*, 903 F.3d at 391 (quoting *Burchick Constr. Co., Inc. v. Harleysville Preferred Ins. Co.*, 2014 WL 10965436, at *8 (Pa. Super. 2014)); *Kiely on Behalf of Feinstein v. Phila. Contributionship Ins. Co.*, 206 A.3d 1140, 1146 (Pa. Super. 2019) ("We do not consider extrinsic evidence." (citations omitted)).

identical to one another. Each policy contained provisions outlining covered occurrences and exclusions to coverage, as well as pertinent definitions.

**Coverage agreements:**

- Coverage E – Personal Liability. "We will pay damages an insured is legally obligated to pay due to an occurrence resulting from negligent personal acts or negligence arising out of the ownership, maintenance or use of real or personal property. We will provide a defense at our expensive by counsel of our choice. We may investigate and settle any claim or suit. Our duty to defend a claim or suit ends when the amount we pay for damages equals our limit of liability."[47]

- Coverage F – Medical Payments to Others. "We will pay the necessary medical and funeral expenses incurred within three years after an accident causing bodily injury. This coverage does not apply to you, it does not apply to regular residents of your household, it does apply to residence employees. Payment under this coverage is not an admission of our or an insured's liability. This coverage applies as follows . . :
    - "To a person off the insured location, if the bodily injury:
        - "Is caused by the activities of an insured."

**Additional liability coverages:**

- "We will pay the following in addition to the limits of liability. These additional coverages are not subject to the Section II Liability Exclusions.
    - "Claims Expense. We will pay:
        - "Expenses we incur and costs levied against an insured in a legal action we defend, including prejudgment interest on that portion of the award which does not exceed the limit of this coverage."

**Additional definitions applicable to these coverages:**

- "'BODILY INJURY' means bodily harm, including resulting care, sickness or disease, loss of services or death. Bodily injury does not include emotional distress, mental anguish, humiliation, mental

---

[47] Doc. 32 at 18-19. Coverage E – Personal Liability.

- distress or injury, or any similar injury unless the direct result of bodily harm."
- "'OCCURRENCE' means bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition.  The occurrence must be during the policy period."

The Nationwide policies also outline three exclusions to coverage, as reflected below in relevant part.

**Liability Exclusions:**

- Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to bodily injury or property damage:
    - "By an act intending to cause harm done by or at the direction of any insured . . .
    - "Caused by or resulting from an act or omission which is criminal in nature and committed by an insured.
        - "This exclusion [] applies regardless of whether the insured is actually charged with, or convicted of a crime.
    - "Resulting from actions or omissions relating directly or indirectly to sexual molestation, physical or mental abuse, harassment, including sexual harassment, whether actual, alleged, or threatened."

**D.    Analysis**

Nationwide asserts that there is no duty to defend the three Declaratory Judgment Defendants in the *Piazza* lawsuit.  Nationwide accepts that coverage has been triggered by occurrences as to each defendant, but claims that any occurrence is excluded under either the criminal act, physical abuse, or intentional act exclusions in the policy.[48]  The Court examines the allegations about each Declaratory

---

[48] During oral argument, the Court asked counsel for Nationwide more than once whether Nationwide disputed that an occurrence had taken place.  Counsel confirmed that Nationwide did not dispute this.

Judgment Defendant and determines whether any exclusions would completely foreclose Nationwide's duty to defend.

As noted above, each of the policies defines an "occurrence" as "bodily injury or property damage resulting from an accident, including continuous or repeated exposure to the same general condition." Courts have held that "[i]ntentional conduct does not qualify as an 'occurrence,' while conduct that is accidental or negligent does."[49] Furthermore, the Court must assess whether an event is an "occurrence" from the perspective of the insured, not any other party.[50]

Nationwide's duty to defend continues until it has cabined the *Piazza* litigation *only* to claims for which it has no duty to defend. In other words, if any claim exists which Nationwide would have to defend, Nationwide must continue to defend the entire litigation. So at this stage, if the Court identifies a single claim on which Nationwide has to defend a given Declaratory Judgment Defendant, I must deny summary judgment as to that individual.

> **1. The Factual Allegations of Negligence "After the Fall" Against Jerald Coyne and Gary DiBileo Trigger Nationwide's Duty to Defend**

The allegations against Coyne and DiBileo show that Nationwide may not have to defend certain allegations based on the various exclusions. But there are factual allegations and claims of negligence that still implicate Nationwide's duty

---

[49] *Allstate Ins. Co. v. Hopfer*, 672 F. Supp. 2d 682, 686 (E.D. Pa. 2009).
[50] *See Nationwide Mut. Fire Ins. Co. of Columbus v. Pipher*, 140 F.3d 222, 226 (3d Cir. 1998).

to defend. For example, Coyne and DiBileo, along with other *Piazza* defendants, are alleged to have committed negligence by failing to aid Timothy Piazza after he fell.[51] The *Piazza* Amended Complaint alleges that after The Gauntlet finished in the basement, some of the *Piazza* defendants helped Timothy to a couch on the first floor of the fraternity house.

At some point, Timothy left the couch and fell down the stairs. Various *Piazza* defendants tried to bring Timothy (who was then unconscious) back up the stairs to the couch and sought to wake him up. DiBileo tried to stabilize and help Timothy while he was on the couch.[52] Coyne, DiBileo, and other *Piazza* defendants placed a backpack filled with books on Timothy to weigh him down in order to keep him from rolling over and choking on his own vomit.[53] In the *Piazza* litigation, I ruled that the *Piazza* plaintiffs had stated a claim for negligence that took place after Timothy fell.[54] It was plausibly pleaded that Coyne and DiBileo (and other *Piazza* defendants) assumed a duty of care and then breached it by failing to get professional medical aid. "And that failure, of course, could plausibly have been a substantial factor in Timothy's death."[55]

---

[51] The *Piazza* Amended Complaint also implicates Martines in the alleged negligence after the fall, but that claim was dismissed as to him. Thus, it cannot trigger Nationwide's duty to defend Martines.
[52] Doc. 32-11 ¶ 274.
[53] *Id.* ¶¶ 278-280.
[54] While the claim for negligence after the fall was at first dismissed as to DiBileo, the *Piazza* Amended Complaint satisfactorily pleaded this claim against him.
[55] *Piazza v. Young*, 403 F. Supp. 3d 421, 437-38 (M.D. Pa. 2019).

Nationwide attempts to convince the Court that these allegations do not constitute a separate occurrence, or in the alternative, that the criminal act exclusion should still apply. Neither argument is convincing. First, the allegations in the *Piazza* Amended Complaint speak for themselves. They establish a claim for negligence. The allegations state that Coyne and DiBileo breached a duty of care by acting negligently, and this could have led to Timothy Piazza's death.

Furthermore, Nationwide provided no legal support for its argument that the alleged negligence after Timothy's fall should not constitute an occurrence that triggers the duty to defend. Nationwide's argument is essentially that any negligence after an allegedly intentional act should not be covered. Nationwide invoked an interesting hypothetical, trying to illustrate the potential negative results of finding against it. But Nationwide's argument asks the Court to ignore standard insurance interpretation, as well as the text of its own insurance policies. Other courts have found likewise: negligence after an intentional act can still trigger coverage under an insurance policy.[56]

For example, in *Allstate Ins. Co. v. Hopfer*, the Eastern District of Pennsylvania noted that when "an insured person engages in intentional acts leading to the death or bodily injury of another, but allegations in an underlying complaint state a cause of action for negligence, the insured's acts or omissions

---

[56] *See, e.g., Allstate Ins. Co. v. Hopfer*, 672 F. Supp. 2d 682, 686 (E.D. Pa. 2009).

may still qualify as an 'occurrence.'"[57] In that case, one of the defendants injected a victim with an opioid repeatedly, gave her a dose twice as large as previous injections, and encouraged her to inject the drug several times. But the court there noted that the underlying complaint also alleged negligence, including that the defendant failed to, for example, "obtain medical attention for [the victim] at the first signs of labored breathing, discoloration, vomiting, and loss of consciousness," and "to report the adverse reaction in a timely manner."[58]

In *Hopfer*, the defendant had pleaded guilty to drug delivery resulting in death, and the court still correctly noted that the defendant's intentional acts and subsequent "conviction d[id] not foreclose the possibility that [the victim] also died as the result of [the defendant's] negligence following the injection."[59] Thus, the court found that the complaint set forth allegations of negligence, and that those allegations qualified as occurrences that would trigger the duty to defend, subject to any exclusions.

The same result is compelled here. Despite Nationwide's unsupported argument to the contrary, it has not shown an entitlement to summary judgment on that question. Coyne and DiBileo's alleged negligence after Timothy's fall constitute occurrences that trigger Nationwide's duty to defend. So I consider whether any exclusion applies to Coyne or DiBileo.

---

57   *Id.* at 687.
58   *Id.*
59   *Id.* at 688.

Nationwide baldly asserts that these allegations of Coyne and DiBileo's negligence do not "negate the application of the criminal act exclusion."[60] Of course, some facts alleged against Coyne and DiBileo elsewhere in the *Piazza* Amended Complaint may well implicate the criminal act exclusion. But this does not mean that the criminal act exclusion automatically applies to *every* allegation against them. It is Nationwide's burden to show that the criminal act exclusion applies to this set of allegations;[61] Nationwide's conclusory claim that Coyne and DiBileo's alleged negligence "cannot obviate or create an exception to the criminal act exclusion under the present circumstances" fails to meaningfully grapple with the policy language or case law.[62]

Nationwide does not argue that those allegations involve conduct that is "criminal in nature," which would be necessary to implicate that exclusion.[63] Nationwide's argument offers little to support its contention. As a result, I cannot find that Nationwide has shown an entitlement to summary judgment against

---

[60] Doc. 33 at 11.
[61] *Little v. MGIC Indem. Corp.*, 649 F. Supp. 1460, 1466 (W.D. Pa. 1986), aff'd, 836 F.2d 789 (3d Cir. 1987) ("If a claim falls outside the scope of the policy because of an exclusion in the policy, it is the insurer's burden to demonstrate that the exclusion applies. An insurer is not excused from its duty to defend until it becomes apparent that there are no circumstances under which the insurer would be responsible.") (internal citations omitted).
[62] Doc. 33 at 12-13.
[63] Nor does Nationwide argue that these allegations would fall under the intentional act exclusion or the physical abuse exclusion. To the extent Nationwide tried to do so, those arguments would fail. For example, leading Timothy to a couch and backpacking him so that he would not choke were not actions taken with the intent to harm him, nor could that specific action reasonably be considered abusive. At that point of the night, the allegations only implicate negligence by DiBileo and Coyne.

Coyne or DiBileo.  Nationwide's duty to defend Coyne and DiBileo remains ongoing.

### 2. Nationwide has Established no Exclusions Applicable to Jonathan Martines.

As noted above, Nationwide conceded for the purpose of this motion that an occurrence has taken place.  So the question before the Court is whether any of the exclusions apply.  They do not.  Therefore, Nationwide must continue to defend Martines.

The allegations against Martines are fairly limited.  They essentially confirm his citizenship, his membership and role in the fraternity, and detail his involvement and presence on that night.  There are also a host of allegations that loop in essentially every defendant under the conspiracy claim, but do not delineate between the actions of each defendant in the *Piazza* litigation.  What Nationwide is in effect asking the Court to do is apply the law of conspiracy to this litigation, rather than the allegations against each defendant.

Nationwide failed to direct this Court to any case, either in briefing or during oral argument, when a court applied broad allegations of conspiracy against a group to a subsequent insurance dispute to find an applicable exclusion.  Though the allegations were enough to survive a motion to dismiss in the underlying litigation, particularly before meaningful discovery had taken place, it seems

implausible to say that those same allegations could justify denying coverage in this setting.

A number of the allegations against Martines were made "on information and belief."[64] As the Third Circuit recently explained, that is just "a lawyerly way of saying that [a party] does not know that something is a fact but just suspects it or has heard it."[65] Instead, it seems the proper approach is to find the allegations directed against the individual defendant and determine whether any exclusion applies. Nationwide's brief in support of their motion does not sufficiently grapple with the different allegations made against each defendant and which exclusions might fit.

First, the physical abuse exclusion does not apply to any actions taken by Martines. It seems that his only interaction with Timothy Piazza involved him walking past Timothy and ignoring him. That cannot constitute an abusive act. Second, Nationwide does not discuss the intentional act exclusion as to Martines. For that reason, neither will the Court. Finally, the criminal act exclusion also does not offer Nationwide an escape for the same reasons; namely, it is unclear what actions Nationwide claims Martines himself took, rather than those broadly alleged

---

[64] *See, e.g.*, Doc. 32-11 ¶ 117 ("On information and belief, the Alpha Upsilon Executive Board members Brendan Young, Edward Gilmartin, Daniel Casey, Adam Mengden, Ryan Burke, Michael Angelo Schiavone, Matthew Reinmund, Jonathan Martines, and Braxton Becker planned, orchestrated, organized, oversaw, participated in, facilitated, or directed the hazing of pledges, including Timothy Piazza, on February 2, 2017.").

[65] *Donald J. Trump for President, Inc. v. Sec'y of Pennsylvania*, 830 Fed. Appx. 377, 387 (3d Cir. 2020).

through the conspiracy claim.  And Nationwide has offered no support for its legal position on the conspiracy allegations.  Nationwide's failure to delineate between the multiple Declaratory Judgment Defendants weakened its motion.  As a result, the Court cannot find that Nationwide has shown an entitlement to summary judgment as to Martines.

## III. CONCLUSION

Nationwide's motion for summary judgment is denied, without prejudice to renew the motion as the *Piazza* litigation develops.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge